# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT TOLEDO

| | |
|---|---|
| **KELLI SUTTLES,** | : |
| 2066 Victory Rd., Lot 82 | : |
| Marion, OH 443302 | : Civil Action No.: 3:17-cv-1346 |
| | : |
| and | : JUDGE |
| | : |
| **JESSICA TUCKER,** | : MAGISTRATE JUDGE |
| 2301 Bethany Ln. | : |
| Marion, OH 443302 | : |
| | : |
| and | : |
| | : |
| **HEIDI PHELAN,** | : |
| 774 Nelson St. | : |
| Marion, OH 43302 | : **<u>Jury Demand Endorsed Hereon</u>** |
| | : |
| and | : |
| | : |
| **TIMOTHY PHELAN,** | : |
| 774 Nelson St. | : |
| Marion, OH 43302 | : |
| | : |
| and | : |
| | : |
| **JEREMY JONES,** | : |
| 765 Woodrow Ave., | : |
| Marion, OH 43302 | : |
| | : |
| **Plaintiffs, for themselves,** | : |
| **and all others similarly situated,** | : |
| | : |
| vs. | : |
| | : |
| | : |
| **BUCKEYE FAMILY RESIDENTIAL** | : |
| **CARE SERVICES, INC.,** | : |
| Serve Statutory Agent: | : |
| Randy Richards | : |
| 17 S. High St. | : |
| Columbus, OH 43215 | : |
| | : |
| and | : |

| | |
|---|---|
| **BRAD BELCHER,** | : |
| 170 Fairfax Rd. | : |
| Marion, Ohio 43302 | : |
| | : |
| **Defendants.** | : |

# COMPLAINT

NOW COME Plaintiffs Kelli Suttles, Jessica Tucker, Heidi Phelan, Timothy Phelan, and Jeremy Jones ("Plaintiffs") and proffer this Complaint for damages against Defendant Buckeye Family Residential Care Services, Inc. and Defendant Brad Belcher ("Defendants").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), Buc, and Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("Chapter 4111"), and Ohio law.

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiffs' claims arising under the law of the United States and over actions to secure equitable and other relief.

3. This Court has jurisdiction over Plaintiffs' claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiffs entered into an employment relationship with Defendants in the Northern District of Ohio and performed their job duties there, and Defendants are doing and have done substantial business in the Northern District of Ohio.

## THE PARTIES

5. Plaintiff Kelli Suttles is an individual, a United States citizen, and a resident of the state of Ohio. Ms. Suttles resides in Marion County, Ohio.

6. Plaintiff Jessica Tucker is an individual, a United States citizen, and a resident of the state of Ohio. Ms. Tucker resides in Marion County, Ohio.

7. Plaintiff Heidi Phelan is an individual, a United States citizen, and a resident of the state of Ohio. Ms. Phelan resides in Marion County, Ohio.

8. Plaintiff Timothy Phelan is an individual, a United States citizen, and a resident of the state of Ohio. Mr. Phelan resides in Marion County, Ohio.

9. Plaintiff Jeremy Jones is an individual, a United States citizen, and a resident of the state of Ohio. Mr. Jones resides in Marion County, Ohio.

10. At all times relevant herein, the Plaintiffs were employees of Defendants as that term is defined in the FLSA and O.R.C. Chapter 4111.

11. Defendant Buckeye Family Residential Care Services, Inc. is an Ohio Corporation, registered to do business in Ohio and conducts business in the Northern District of Ohio.

12. Defendant Brad Belcher is an individual, and the owner and C.E.O. of Defendant Buckeye Family Residential Care Services, Inc. Defendant Belcher sets and controls the pay practices of Buckeye Family Residential Care Services, Inc.

13. At all times relevant herein, Defendants were covered employers as that term is defined in the FLSA and O.R.C. Chapter 4111.

14. At all times relevant to this action, Defendants were engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants' constituted an enterprise engaged in commerce within the meaning of the FLSA.

15. Plaintiffs bring this action on their own behalf and on behalf of those similarly situated, and each Plaintiff has given written consent to bring this action to collect unpaid overtime

and other unpaid compensation under the FLSA. The consents are being filed along with the Complaint pursuant to 29 U.S.C. § 216(b). (Attached as Exhibit A).

## FACTUAL BACKGROUND

**Defendants' Pay Practices**

16. Defendants are in the business of providing services to individuals with mental, emotional, and behavior issues at state-licensed long-term care residential facilities in the central Ohio area.

17. Defendants operate four (4) residential facilities: 1) Hillside Rest Home, located at 333 N. Prospect St. in Marion, Ohio 2) Royal Gables, located at 345 N. Prospect St. in Marion, Ohio, 3) Fritz House, located at 451 McDonald Pike in Paulding, Ohio, and 4) Buckeye Rest Home, located at 234 W. Buckeye St. in Clyde, Ohio.

18. Defendants maintain a principle office in Marion, Ohio located at 170 Fairfax Road.

19. Defendants maintain uniform pay policies and procedures for their employees within the four facilities. Defendant Belcher determines and implements Defendants' pay policies and procedures.

20. Upon information and belief, at any given time, Defendants employs approximately 50 hourly-paid employees across the four abovementioned facilities.

21. These hourly-paid positions include, but are not limited to: administrative staff, facility managers, caregivers, and maintenance staff (hereinafter collectively referred to as "Hourly Employees").

22. At all times relevant herein, Defendants have utilized a bi-weekly pay period.

23. Defendants' workweeks begin on Thursday and end on the following Wednesday.

24. Prior to March 23, 2016, Defendants maintained a policy of not paying overtime compensation to its Hourly Employees for all hours worked in a single workweek in excess of 40.

25. Instead, Defendants only paid overtime compensation to its Hourly Employees if the employee exceeded 80 hours in a two-week pay period.

26. All hours in excess of 40 worked in a single workweek were paid at the Hourly Employees' regular rate of pay ("straight time").

27. Defendants provide each of their Hourly Employees with a paper time card. Hourly Employees are required to clock-in and clock-out by inserting their time cards in the timeclocks located in each of Defendants' facilities.

28. Hourly Employees submit their time cards to Defendants' Human Resources department on a bi-weekly basis.

29. On or around March 23, 2016, Defendants provided their employees with a document to review and sign. The document was addressed to "all employees of Buckeye Family" regarding a "Policy change."

30. The document stated that "[e]ffective immediately we are using a WEEKLY SCHEDULE." It further stated that "overtime will be based upon each individual work week."

31. The document was signed by Defendant Belcher, and provided a space for each employee to sign and date the document, acknowledging that they had "read and understood the above policy change."

**Named Plaintiffs' Experiences**

  **A. Plaintiff Suttles**

32. Plaintiff Suttles was hired by Defendants in or around February 2014 in the position of caregiver.

33. In or around early 2015, Plaintiff Suttles began working both as a caregiver and as an assistant to the facility manager at Defendants' Hillside Rest Home and Royal Gables facilities.

34. In the position of caregiver, Plaintiff Suttles was responsible for cooking, cleaning, administering medication to residents, and assisting with the transporting of residents, among other things.

35. Plaintiff Suttles also assisted with the facility management at Hillside Rest Home and Royal Gables. In this role, Plaintiff Suttles assisted with creating schedules for caregivers, managing employee personnel files, menu planning, ordering medication for residents, and assisting with completing resident admission documentation, among other things.

36. Plaintiff Suttles ceased working for Defendants for a period of approximately three months, beginning in or around August 2016. Plaintiff Suttles returned to work for Defendants in or around October 2016 in the position of facility manager at Defendants' Hillside Rest Home and Royal Gables facilities.

37. In the position of facility manager, Plaintiff Suttles was paid on an hourly basis, at a rate of $13.00 per hour.

38. Plaintiff Suttles continued in the position of facility manager until her employment with Defendants ended on or around June 9, 2017.

39. At all times throughout her employment, Plaintiff Suttles was paid on an hourly basis. Plaintiff Suttles' rate of pay per hour ranged from approximately $7.95 to $13.00 per hour during her employment with Defendants.

40. At all times throughout her employment, Plaintiff Suttles was subjected to the same pay practices set forth above.

41. At all times from the start of her employment with Defendants until approximately March 23, 2016, Plaintiff Suttles regularly worked more than 40 hours in a single workweek, but was not compensated at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40.

42. Instead, prior to approximately March 23, 2016, Plaintiff Suttles was only compensated at a rate of one and one-half times her regular rate of pay if she worked more than 80 hours in a two-week pay period.

**B. Plaintiff Tucker**

43. Plaintiff Tucker was hired by Defendants in or around February 2011 in the position of caregiver. Plaintiff Tucker worked as a caregiver at the Hillside Rest Home and Royal Gables facilities.

44. In or around November 2013, Plaintiff Tucker began assisting with the management of the Hillside Rest Home and Royal Gables facilities. In or around February 2014, Plaintiff Tucker took over the role of the facility manager at these two facilities.

45. In or around November 2015, Plaintiff Tucker began transiting to a manger role over each of the four facilities. In this position, Plaintiff Tucker became aware that all employees at all four facilities were paid on an hourly basis.

46. In or around early 2017, Plaintiff Tucker was promoted to the position of Administrative Services Director. In this position, Plaintiff Tucker was responsible for visiting mental health agencies, seeking referrals, and overseeing all four facilities, among other things.

47. Plaintiff Tucker's employment with Defendants ended on or around June 8, 2017.

48. At all times throughout her employment, Plaintiff Tucker was paid on an hourly basis. Plaintiff Tucker's rate of pay per hour ranged from $9.00 to $17.00 per hour throughout her employment.

49. At all times throughout her employment, Plaintiff Tucker was subjected to the same pay practices set forth above.

50. At all times from the start of her employment with Defendants until approximately March 23, 2016, Plaintiff Tucker regularly worked more than 40 hours in a single workweek, but was not compensated at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40.

51. Instead, prior to approximately March 23, 2016, Plaintiff Tucker was only compensated at a rate of one and one-half times her regular rate of pay if she worked more than 80 hours in a two-week pay period.

52. In or around January 2015, Plaintiff Tucker spoke with Peggy Miller in Defendants' payroll department. Plaintiff Tucker informed Ms. Miller that she believed that Defendants were not properly paying their employees overtime compensation based on the Human Resources webinar that she had recently completed.

53. Ms. Miller replied that Plaintiff Tucker was wrong, and that this was the way management wanted its employees to be paid.

54. In or around 2015, Ms. Miller was replaced by Ms. Elizabeth Hickle. Plaintiff Tucker approached Ms. Hickle and communicated her concerns that Defendants were not properly paying overtime to its employees. Ms. Hickle ignored Ms. Tucker's concerns.

55. In or around early 2016, Plaintiff Tucker spoke with Defendant Belcher regarding the company's pay practices. Plaintiff Tucker stated that she did not believe that Defendants were

properly paying its employees overtime compensation. She stated that employees should be paid overtime if they worked more than 40 hours in a workweek.

### C. Plaintiff Heidi Phelan

56. Plaintiff Heidi Phelan was hired by Defendants on or around July 7, 2014 in the position of caregiver.

57. As a caregiver, Plaintiff Phelan's job duties included cooking for residents, serving residents meals, administering medication to residents, cleaning the facility and resident rooms, and emptying trash, among other things.

58. Plaintiff Heidi Phelan worked at the Hillside Rest Home, Royal Gables, and Buckeye Rest Home facilities throughout her years of employment with Defendants.

59. Plaintiff Heidi Phelan's employment with Defendants ended in or around late-January 2017.

60. At all times throughout her employment, Plaintiff Heidi Phelan was paid on an hourly basis. Plaintiff Heidi Phelan's rate of pay per hour ranged from approximately $8.10 to $10.00 per hour throughout her employment.

61. At all times throughout her employment, Plaintiff Heidi Phelan was subjected to the same pay practices set forth above.

62. At all times from the start of her employment with Defendants until approximately March 23, 2016, Plaintiff Heidi Phelan regularly worked more than 40 hours in a single workweek, but was not compensated at a rate of one and one-half times her regular rate of pay for all hours worked in excess of 40.

63. Instead, prior to approximately March 23, 2016, Plaintiff Heidi Phelan was only compensated at a rate of one and one-half times her regular rate of pay if she worked more than 80 hours in a two-week pay period.

**D. Plaintiff Timothy Phelan**

64. Plaintiff Timothy Phelan was hired by Defendants in or around 2013 as the lead of Defendants' maintenance department.

65. In this position, Plaintiff Timothy Phelan was responsible for performing repairs, both cosmetic and structural, at Defendants' four facilities; training newly hired maintenance personnel; and completing remodeling work, among other things.

66. During his employment with Defendant, Plaintiff Timothy Phelan was also required to be "on call" for maintenance-related issued 24 hours per day, 7 days per week.

67. Plaintiff Timothy Phelan carried a company-issued cell phone with him at all times, and was required to respond to any emergency maintenance calls he received.

68. Defendant Belcher instructed Plaintiff Timothy Phelan to call Larry Harmon, office manager, any time he needed to respond to a maintenance issue outside of his regularly-scheduled work hours.

69. Defendant Belcher stated that Mr. Harmon would make note of the "on-call hours" Plaintiff Phelan worked on that occasion on his time card.

70. Plaintiff Timothy Phelan's employment with Defendants ended in or around late-October 2015.

71. At all times throughout his employment, Plaintiff Timothy Phelan was paid on an hourly basis. Plaintiff Timothy Phelan's rate of pay per hour ranged from approximately $10.50 to $14.50 per hour throughout his employment.

72. At all times throughout his employment, Plaintiff Timothy Phelan was subjected to the same pay practices set forth above.

73. At all times from the start of his employment with Defendants until approximately March 23, 2016, Plaintiff Timothy Phelan regularly worked more than 40 hours in a single workweek, but was not compensated at a rate of one and one-half times his regular rate of pay for all hours worked in excess of 40.

74. Instead, prior to approximately March 23, 2016, Plaintiff Timothy Phelan was only compensated at a rate of one and one-half times his regular rate of pay if he worked more than 80 hours in a two-week pay period.

**E. Plaintiff Jeremy Jones**

75. Plaintiff Jones was first hired by Defendants in or around early 2000s. Most recently, Plaintiff Jones was employed with Defendants between approximately 2014 and approximately late-January or early-February 2017.

76. At all times relevant herein, Plaintiff Jones was employed with Defendants as a Caregiver at both the Hillside Rest Home and Royal Gables facilities.

77. In this position, Plaintiff Jones was responsible for cooking, planning residents' menus, preparing residents' meals, cleaning facilities' common areas, providing transportation for residents, grocery shopping, and administering medications to residents.

78. At all times throughout his employment, Plaintiff Jones was paid on an hourly basis. Plaintiff Jones' rate of pay per hour ranged from approximately $8.50 to $11.00 per hour throughout his employment.

79. At all times throughout his employment, Plaintiff Jones was subjected to the same pay practices set forth above.

80. At all times from the start of his employment with Defendants until approximately March 23, 2016, Plaintiff Jones regularly worked more than 40 hours in a single workweek, but was not compensated at a rate of one and one-half times his regular rate of pay for all hours worked in excess of 40.

81. Instead, prior to approximately March 23, 2016, Plaintiff Jones was only compensated at a rate of one and one-half times his regular rate of pay if he worked more than 80 hours in a two-week pay period.

**FIRST CAUSE OF ACTION (AGAINST ALL DEFENDANTS)**
**FLSA Collective Action, 29 U.S.C. §201, *et seq*. - Failure to Pay Overtime**

82. All of the preceding paragraphs are realleged as if fully rewritten herein.

83. Plaintiffs bring this FLSA claim pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of themselves and all other Similarly Situated Persons ("SSPs") of the opt-in class, which includes: All current and former hourly-paid individuals employed by Defendants at the Hillside Rest Home, Royal Gables, Fritz House, and/or Buckeye Rest Home facilities, for 3 years prior to the date of filing this Complaint, who were paid on an hourly basis, and who did not receive overtime payment at a rate of one and one-half times their regular rate of pay for all hours worked in a single workweek in excess of 40 (hereinafter referred to collectively as "Hourly Employees").

84. Upon information and belief, in the three years prior to the date of filing this Complaint, Defendants have employed more than 1000 Hourly Employees. These other Hourly Employees are similarly situated to Plaintiffs and are referred to herein as Similarly Situated Plaintiffs or "SSPs".

85. This action is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation withheld in violation of the FLSA. Plaintiffs are

representative of all Hourly Employees employed by Defendants and are acting on behalf of their interests as well as their own in bringing this action.

86. The SSPs are known to Defendants and are readily identifiable through Defendants' payroll records. These individuals may readily be notified of this action, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, overtime compensation, liquidated damages, interest, attorneys' fees and costs under the FLSA.

87. Plaintiffs and the SSPs are paid on an hourly basis.

88. Plaintiffs and the SSPs are not exempt from the overtime requirements of the FLSA.

89. Plaintiffs and the SSPs were not paid an overtime premium for all hours worked over 40 in a workweek prior to approximately March 23, 2016.

90. Defendants were aware that Plaintiffs and the SSPs regularly worked more than 40 hours per week, but were not receiving overtime compensation at a rate of one and one-half times their regular rate of pay for hours worked in excess of 40 per week.

91. Defendants knew or should have known they was required to pay Plaintiffs and the SSPs at an overtime premium for all hours worked in a single workweek in excess of 40.

92. In fact, Plaintiff Tucker raised the issue of improper overtime pay with management on several occasions beginning in or around January 2015. Plaintiff Tucker's concerns were ignored.

93. Plaintiff Tucker spoke directly with Defendant Belcher in or around early 2016 regarding overtime pay. Specifically, Plaintiff Tucker stated that she did not believe Defendants were properly paying its employees overtime pay.

94. Defendants knowingly failed to address Plaintiff Tucker's complaints regarding improper overtime pay to Defendants' employees until approximately March 23, 2016.

95. Defendant Belcher knowingly and blatantly disregarded the overtime requirements of the FLSA. Defendants' violation of the FLSA was a willful one.

96. Accordingly, Plaintiffs and the SSPs were forced to work more than 40 hours per week without proper overtime compensation. As a result, Plaintiffs and the SSPs have been damaged.

### SECOND CAUSE OF ACTION (AGAINST ALL DEFENDANTS)
### OMFWSA R.C. 4111.03 - Failure to Pay Overtime

97. All of the preceding paragraphs are realleged as if fully rewritten herein.

98. This claim is brought under Ohio Law.

99. Defendants' repeated and knowing failure to pay overtime wages for hours worked in excess of forty (40) per workweek prior to approximately March 23, 2016 was a violation of Section 4111.03 of the Ohio Revised Code.

100. For the Defendants' violations of ORC 4111.03, Plaintiffs are entitled to recover unpaid wages, interest, attorneys' fees, and all other remedies available under Ohio law.

### THIRD CAUSE OF ACTION (AGAINST DEFENDANT BUCKEYE FAMILY RESIDENTIAL CARE SERVICES, INC. ONLY)
### R.C. 4113.15 – Failure to Tender Pay by Regular Payday

101. All of the preceding paragraphs are realleged as if fully rewritten herein.

102. Plaintiffs assert this claim under R.C. 4113.15, which requires Defendant Buckeye Family Residential Care Services, Inc. (hereinafter "Defendant Buckeye Family") to pay its employees within thirty (30) days of when they performed compensable work.

103. At all times prior to approximately March 23, 2016, Defendant Buckeye Family failed to fail to make proper wage payments to its hourly-paid employees for all overtime compensation for hours worked in excess of 40 in a workweek.

104. By failing to make the wage payments within 30 days of when such payments were due, Defendant Buckeye Family has violated R.C. 4113.15.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and similarly situated individuals are entitled to and pray for the following relief:

A. Designation of this action as a collective action pursuant to the FLSA on behalf of the collective action members and prompt issuance of notice to all similarly situated members of the proposed opt-in class, notifying them of this action, and permitting them to assert their timely claims for overtime payment in this action;

B. An award of unpaid overtime wages due under the FLSA, OMFWSA, and R.C. § 4113.15;

C. An award of liquidated damages and/or treble damages as a result of Defendants' failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and R.C. § 4113.15;

D. An award of prejudgment and post judgment interest;

E. An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees;

F. Such other legal and equitable relief as this Court deems appropriate.

Respectfully submitted,

/s/*Greg Mansell*
Greg R. Mansell (0085197)
(*Greg@MansellLawLLC.com*)
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com*)
**Mansell Law, LLC**
1457 S. High St.
Columbus, OH 43207
Ph: (614) 610-4134
Fax: (513) 826-9311
*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/*Greg R. Mansell*
Greg R. Mansell (0085197)